## Walker, Sheriff, v. Commonwealth et al.

June 16, 1939.

J. J. Tye, Judge.

G. W. Hatfield for appellant.

Stephens & Steeley for appellees.

Opinion of the Court by Judge Thomas—Affirming.

At the regular 1937 election the appellant and one of the defendants below, G. C. Walker, was elected sheriff of McCreary county, qualifying and taking the office on the first Monday in January, 1938. One of the ap-

pellees and sole plaintiff below, T. F. Roundtree, was the regular elected sheriff of the county for the preceding term, which expired on the same day that Walker qualified. Upon retiring from office he executed the necessary bonds required by law to qualify him as tax collector of uncollected taxes for the last year of his term, which was 1937. One of the defendants and also an appellee, "Cincinnati, New Orleans and Texas Pacific Railway Company," during and prior to 1937 owned and operated a railroad traversing McCreary county, Kentucky, and also some of its subordinate governmental divisions or agencies supported by taxation. The state revenue department during and prior to that year was the assessing agency of its property and especially its franchise for the purpose of taxation. The company had made, during the year 1937, the required reports to that department whereby it might calculate and certify to the correct assessment for that year. But for some cause, not disclosed by the record, it did not furnish or complete its assessment before the first Monday in January, 1938, when the personnel of the office of sheriff of the county was changed as indicated. That duty on its part was not done until a later date, the record not disclosing when.

Upon the filing of the assessment so made by the Revenue Department with the State Auditor the latter certified the amount apportioned to McCreary county and its various governmental subdivisions to the county court clerk of the county, as required by law, and whose duty it was to certify the various amounts, so furnished to him by the auditor, to the proper officer for collection. In the meantime a controversy arose between the outgoing and the incoming sheriff as to who had the right to collect the taxes due from the Railway Company as per the belated assessment supra, amounting to $28,875.13. About that time the same question arose in Muhlenberg County, Kentucky, and it was submitted to the Attorney General of the Commonwealth who gave an opinion that the language of Section 4135 of the 1936 Revision of Carroll's Kentucky Statutes—after the amendment made by chapter 129, page 438 of the 1928 Acts—was somewhat ambiguous and more or less doubtful as to whether that amendment, giving the outgoing sheriff the right to collect uncollected taxes for the last year of his term following its expiration, embraced uncollected taxes, the bills or certificates of which had

not been delivered to him before the expiration of his term.

Upon the delivery of that opinion the legislature was holding its first 1938 special session, and in order to make Section 4135 clear and explicit on the point indicated, and to remove the doubt that the attorney general had expressed, it enacted chapter 36 of the acts of that session, which is on page 1117 of the published acts of the regular, the first and the second special sessions of that year. That amendatory act incorporated in the original Section 4135 which it amended, following these words in the original section: "shall keep in his possession all unpaid tax bills and shall collect and account for same as provided by law," these additional words: "together with any and all other taxes due upon the levy for the preceding year, whether certified prior or subsequent to his qualification as such collector." It furthermore made the amendatory act retrospective and declared an emergency for its immediate taking effect, because of the apparent hiatus in the office of the collector of that class of taxes on account of the attorney general's opinion. With the situation thus confused both the outgoing and incoming sheriff of McCreary county claimed the right to collect the tax from the Railway Company, and each demanded payment thereof to him. It declined to pay either until the question could be judicially determined; whereupon the plaintiff and appellee—who was the outgoing sheriff—filed this declaratory judgment action against his successor and the tax payer, seeking a determination of the question as to who had the right to collect the tax.

Plaintiff contended in his petition that he had the right to do so and to receive the commissions therefor, and he furthermore sought to recover from the tax payer (Railway Company) the penalties and increased interest prescribed for by Section 4091 against a delinquent tax payer. Walker answered denying the right of plaintiff to collect the tax or his right to any of the commissions therefor, and himself claimed the right, under the 1928 act, to collect the tax and receive the commission therefor. He also made his pleading a cross petition against the Railway Company seeking the recovery of the penalty and interest the same as was done by plaintiff in his petition. All affirmative allegations in Walker's answer and cross petition were by agreement controverted of record, and the cause was submitted to

the court, which rendered judgment sustaining the right of the outgoing sheriff (Roundtree) to collect the tax and to receive the commission therefor, and dismissed Walker's cross petition. The judgment also relieved the defendant Railway Company from paying the statutory penalty and extra interest because of the conditions hereinbefore outlined.

Following that opinion the Railway Company paid its taxes as adjudged. Walker prosecuted this appeal therefrom without superseding the judgment and he made Roundtree, the outgoing sheriff, and the Railway Company appellees. The former (Roundtree) sought in this court a cross appeal against his co-appellee, Railway Company, seeking thereby to obtain a review and reversal of the judgment insofar as it relieved the Railway Company of the payment of penalties, etc.; but that motion was overruled upon the ground that a cross appeal does not lie in favor of an appellee against a co-appellee. See State Bank of Stearns v. Stephens, 265 Ky. 615, on page 628, 97 S. W. (2d) 553, and City of Henderson v. Redman, 185 Ky. 146, 214 S. W. 809, 7 A. L. R. 346.

The questions for determination are those presented by plaintiff in his petition and by appellant in his answer and cross petition filed in the trial court. They are: (1) Whether or not Section 4135, as first amended by the 1928 act, embraced, as uncollected taxes which the outgoing sheriff might collect by qualifying himself for the purpose, assessments that had not been certified to the outgoing sheriff and was not in his possession at the time his term of office expired, but which nevertheless was a tax due to be collected for the taxing year (1937) which was the last year of Roundtree's term; if question (1) should be answered in the negative, then (2) whether or not it was competent for the Legislature to retrospectively provide by the 1938 amendment for the collection of the tax due upon such unreported assessment, by the outgoing sheriff, notwithstanding the original section before the amendment failed to do so; and (3), if question (2) should be answered in the affirmative, did the retrospective amendment violate the provisions of Section 161 of our Constitution by reducing the compensation of appellant—as the incoming sheriff—after his election and after his installation in office? We will determine those questions in the order named.

1. The original section (4135) as first enacted in

1928 prescribed that an outgoing sheriff "shall keep in his possession all unpaid tax bills and shall collect and account for same as provided by law," and giving him until the first day of June following his retirement in which to make such collections. It is argued by counsel for Walker that the quoted language from the section before its amendment limited the right of collection of the outgoing sheriff to only tax bills and certificates which were "in his possession" when his successor qualified, and that the quotation from the original section before the 1938 amendment did not confer the right on the retiring sheriff to collect any taxes, the bills or certificates of which he did not have *in his possession* when he retired; but that the incoming sheriff had the right to make the collection and to receive the commission for taxes so conditioned, although when collected they became a part of the annual revenues for the preceding and last year of the outgoing sheriff. The attorney general seems to have at least been doubtful, but leaning toward the same interpretation, and because of which the 1938 amendment was enacted.

It is our conclusion that the statute before such amendment embraced taxes conditioned as that involved here. It must be admitted, however, that the language of the section before the amendment is somewhat clouded, but it should not be forgotten that the purpose of the legislature in enacting the original section in 1928 was to take care of lost commissions of the outgoing sheriff as collector of taxes due to the fact that the date of delinquency in the payment of taxes had been deferred by various legislation to a later date and beyond his term and to compensate for such losses of commission the statute conferred the superior right on them to collect all outstanding and uncollected taxes for the last year of their term.

In view of that purpose it is difficult to conclude that the legislature intended to exclude from the provisions of the 1928 act any uncollected tax, due upon assessments for the year immediately preceding the commencement of a new term, solely because the assessment and fixation of the amount of tax had been delayed and the certificates and tax bills therefor had not been put in possession of the retiring sheriff on the date of the expiration of his term. Neither do we conclude that the language of the section before the 1928 amendment necessarily supports that interpretation. "Shall keep in

his possession all unpaid tax bills" does not necessarily mean that the tax bills referred to must have been in the possession of the retiring sheriff at the time his term of office expired. It is equally susceptible to the interpretation that when the tax bills were made out for the unpaid taxes, whensoever done, the one who should take, keep and collect them would be the retiring sheriff and not the incoming one.

The language itself does not exclude the latter interpretation, and which is in recognition of the clear purpose of the legislature in enacting the statute. It evidently had in mind the maxim that "the law regards that as done which ought to have been done." It regarded, no doubt, that any particular assessment, because of unforeseen delay, would constructively be in the possession of the proper collector of the tax in whose possession it should have been delivered beforehand, and that the delayed delivery of assessments should not be given the effect to exclude the right of collection from the outgoing sheriff, by creating a distinct class of taxes for collection without providing a collector therefor. No such intended omissions are to be indulged in the construction of statutes as long as there is any other possible avoiding interpretation. Our conclusion on this question could be rendered more convincing if the disposition of the case absolutely required it; but, for reasons hereinafter stated, it is unnecessary that it should be done, and because of which we will pass to a consideration of question (2).

2. The 1938 amendment was and is remedial. It is not forbidden as ex post facto legislation, since it does not make acts and conducts committed before its passage criminal. It purported to be and is purely of retrospective operation which it is competent for the legislature to enact in all cases wherein vested rights are not affected. As we shall later see, no unalterable vested right of the incoming sheriff to collect the involved tax and to receive the commission therefor existed at the time of his installation in office or at any time subsequent thereto. That such legislation may be enacted is upheld by a number of domestic cases cited in Key Number System 263 under the title of Statutes in Volume 17 of West's Kentucky Digest—the Key Number appearing on page 426 of that volume. See also Durrett v. Davidson, Sheriff, 122 Ky. 851, 93 S. W. 25, 29 Ky. Law Rep. 401, 8 L. R. A., N. S., 546, and also Kentucky Union

Company v. Kentucky, 219 U. S. 140, 31 S. Ct. 171, 55 L. Ed. 137, as especially applicable to remedial legislation. The case of Heath v. Hazelip, 159 Ky. 555, 167 S. W. 905, is also in point as well as the cases of Henderson & Nashville Railroad Company v. Dickerson, 17 B. Mon. 173, 66 Am. Dec. 148, and Maverick Oil & Gas Company v. Howell, 193 Ky. 433, 237 S. W. 40. We, therefore, conclude that the retrospective provisions contained in the 1938 amendment to Section 4135 in no wise conflicts with any provisions of our constitution, provided it does not impair vested rights, which we are convinced it does not do, as will appear in our later discussion and determination of question (3), to which we will now direct our attention.

3. It is claimed by appellant and so argued by his counsel that he had the right under the statute before the 1938 amendment to collect the involved taxes at the time of his induction in office, and that he could not be deprived of that right by subsequent legislation, since the effect of the deprivation would reduce his compensation by the amount of the commission that he would earn in doing so. But the trouble with that contention is, that in construing Section 161 of the Constitution we have held, in numerous cases, that the section did not forbid the taking away from an officer duties that were imposed upon him at the time of his assuming office, and for the performance of which he received special fees or compensation, upon the ground that the statute deprived him of the special compensation, resulting from relieving him from the performance of duties. Some of such cases are Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 50 S. W. 264, 20 Ky. Law Rep. 1146, 1396, 21 Ky. Law Rep. 1129; James v. Duffy, 140 Ky. 604, 131 S. W. 489, 140 Am. St. Rep. 404; Carl v. Thiel, 211 Ky. 328, 277 S. W. 485; Webster County v. Overby, 240 Ky. 461, 42 S. W. (2d) 707, 709, and others referred to in those opinions.

In the last cited case in passing upon the question we said: "The General Assembly by enactment may relieve an officer in office of a statutory duty or duties, and his compensation or fees therefor will cease without at all involving a change of compensation within the meaning of Section 161 [of our Constitution], supra." The opinion, in support of that statement, cites the other cases we have inserted, and also that of Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133. Therefore, no

vested right of plaintiff was interfered with by the 1938 retrospective amendment, and its provisions placed the right of collecting the involved tax in the hands of the retiring sheriff, Roundtree.

Another question argued in brief, is whether or not the court erred in relieving the Railway Company of the payment of penalties and extra interest? It is quite probable that in the circumstances the court was justified in arriving at that conclusion; but, whether so or not, the question is not presented on this appeal for our determination. The court, as we have held, properly adjudged that Walker, who is the sole appellant here, possessed no rights that he was entitled to assert in this action and properly dismissed his cross petition. He, though possessing no right, is the only one attempting to raise the issue as to the propriety of the court's judgment in so relieving the Railway Company. Roundtree, the successful litigant below, could have raised the question had he prosecuted an appeal from the judgment, but he failed to do so. His effort to place himself in an attitude to insist upon a reversal of that portion of the judgment—by endeavoring to prosecute a cross appeal—was and is without effect, since, as we have seen, his attempted cross appeal is not maintainable against his co-appellee. Therefore, we repeat that the question is not here for our determination and, of course, it will not be undertaken.

Having concluded that the judgment was proper on all of the questions presented by the appeal, it follows that it should be and it is affirmed.

The Whole Court sitting.